Thank you. We'll hear from or we'll get on the screen. I think Pelley's lawyer will remain the same. And then we'll hear. Oh, yeah. Okay. We'll hear from Pellet's counsel. I may please the court. Again, my name is Emil Keeney and I represent the United States. I will try to reserve three minutes for rebuttal. But while armed with a rifle, Charles Chavez attempted to force two people to withdraw money from an ATM owned by Wells Fargo Bank. The district court held that this was not an attempted robbery within the scope of 18 USC section 2113A. Because if the money had been withdrawn, it would no longer have been in the control, would no longer have belonged to the bank at the moment the money is transferred from the victims to the defendant. We think the district court erred for at least three reasons. First, the plain language of the statute requires that a defendant take or attempt to take money when he and we believe that occurs when he obtains possession of it and that he obtains at least constructive possession of it in an ATM robbery when the money appears in the cash dispenser. At that moment, he has power and intent to control the money. The second, we think the district court erred by giving effect to the statement in the Fifth Circuit's decision in United States v. Burton that a customer's withdrawal in that situation is a valid albeit coerced withdrawal. We don't think that that makes much sense and we think that's an error as well. And finally, the district court's ruling leads to anomalous results that are solved by the statute. The plain language of the statute uses the word take and attempt to take describing what a defendant has to do. And we believe that determination of when the money that he is attempting to take belongs to the bank or is within its custody and control is measured at the time of the taking, not at the time that the victim hands over the money to the defendant. The first reason is that taking occurs when the defendant obtains possession, either actual or constructive possession, over money. And we would contend that under the facts of this case, a jury could reasonably find that the defendant had constructive possession of the money at the time, or it would have if it had been withdrawn, at the time that the money is dispensed. Because at that point, the victim who is faced with a gun in his face or some other form of interpretation, not acting voluntarily, doesn't have control, even if the defendant allows the victim to touch the money and hand it over to the defendant. Well, if the taking occurs at the time that somebody takes the money out of the dispenser, hasn't the bank surrendered its possession and control of the money at that point? I mean, control is when you can stop something from happening against you, but by then it's in a public domain. It's in the dispenser. Anybody can get it. Yes, the bank has lost control at that time. Well, our contention is under the statute. It is the defendant who has taken control of the money at that moment. And that's not until the bank had surrendered control of the money and put it into the, so there is no longer the bank controlling or owning that money. It's just appeared in the dispenser and the bank has basically substituted its interest, legal interest, in the in exchange for a legal claim against the person withdrawing the money. I mean, the bank at that point says, now we have a chosen action against the person who withdrew the money when they put their credit card in. And we can't have both as shows of action against the credit card owner and possession and control of the ownership of the money too. Otherwise, we'd have double dip. So when we acquired a shows of action against the credit card depositor, that is when that card was entered and the pin number was entered, then we have that. And in the turn at that point, we exchanged or gave up our ownership in that property, which was manifest by physically getting it into the public domain as well, kind of breaking the stick on the property that you're trying to sell. Then we put that money out there into the public where anyone can get it. We no longer have any ability to snatch it back or stop anyone. I mean, isn't that the way of, isn't that the reality of what has happened here? In the ordinary case, yes. That's what happens when a depositor withdraws money. The ownership of the money and control of the money changes at that moment. But what's happening here is the defendant is in charge of the withdrawal. The defendant is forcing that to occur. The victim is not calling on the bank to repay the loan that the depositor made. If the description I described you agreed with, then it would be a crime by the defendant against the credit card owner rather than against the bank. Your Honor, we don't think that's the because it is the defendant who is coercing the withdrawal. The defendant is taking control of that money directly from the bank. The victim is not making a voluntarily withdrawal. Well, that's my point. Is it directly from the bank or has the bank surrendered it into the public domain when it exchanged its interest in the money for its interest in the shows of action and confirmed that by making the money publicly available to anybody who wanted to take it out that slot? Well, the bank doesn't know that a robbery is going on when there's a withdrawal like that happening. But the statute requires a taking, and that's what the defendant is doing. He is taking it from the bank, a withdrawal that would not be occurring but for the armed force that this defendant was attempting to use against the victim. Do you think it makes any difference whether the defendant physically took the money out of the slot or whether with the gun to his head the owner of the credit card took the money out of the slot? We don't think it makes any difference, Your Honor. In the first instance, it is the defendant taking direct actual possession from the bank itself. In the second, he has at least constructive possession because the victim's actions are not voluntary. They're being coerced by the robber. So whichever instance is happening, it's a taking from the bank that the robber is affecting by his actions, by his use of force and intimidation. Well, what about a woman who's in an abusive relationship with a husband who says, I need some money to go drinking tonight. You go get some money from your ATM account or I'm going to beat you up and terrified she does that. She doesn't have discretionary power. Would you say that when she puts her card in and gets the money out that again that wasn't that that was taking the money by coercion or it wasn't really given to her? Yes, that's like akin to the situation in United States versus Van. It's a similar type of situation where the robber is not present. The government argued in that case and I think would still argue that that is a bank robbery because of the coercion being used. But the thing that makes that more difficult case for us is that the defendant is not present when the money is appearing in the ATM dispenser. But we know that coercion has a long distance effect and you can be just as effective coercing somebody at a distance if you have the proper relationship or improper relationship with them as you can if you're sitting right there next to them. So isn't that then a really, really murky question for us to decide in all the withdrawals? I mean, how free willed really is it or not? I mean, isn't that kind of impossible thing to inject into the normal test of bank robbery? Well, I think the whether exactly what state of mind the victim is acting under would be a question of fact. But if you, you know, they can already argue about that in front of the jury. But what for purposes of this case, whether we've stated a claim, I think that would state a claim of bank robbery. Although I would note that the Van situation is not one that this court needs to resolve in order to rule in our favor in this case. And you're not committing yourself to a certain view of that case, if that situation ever arises, because we do have the defendant present when the attempt of robbery is happening. So, can I just get you to walk through the statute, the statutory language and help me understand when each element occurred in this case? I mean, that would help me. It suggests whoever by force and violence or by intimidation takes or attempts to take. When did that happen in this case? Okay, well, I have the language here. So, whoever by force and violence or by intimidation. And that's, we think that occurs when the robber says, I have a gun, give me give me the money, withdraw money from the ATM. We think that's an attempt, an attempted taking because that is a of the robbery in the ordinary course of events, it would have resulted in a withdrawal of money, unless there was no money in the account. Here, that sequence of events was interrupted by the approach of a sheriff's deputy. So, that's why it's only an attempt. He is attempting to take, pardon? Yeah, from the person or presence of another. When did that? What does that mean in this context? Well, the person or presence element is meant to delineate, distinguish situations where someone is stealing, attempting to take money from a bank where there's a high potential for violence. So, those situations where there's no high potential for personal violence. So, that element is satisfied because the victims are sitting right there in their vehicle, right next to the ATM. And they're the ones being asked to put their card in and start the process of withdrawing the money. The money belongs to the bank. The next element is, well, it is money that he's asking for and it belongs to the bank because, and the district court found this, I don't think anyone disputes it, money inside the ATM is money that belongs to the bank. It's also within the bank's custody or control because it's within the ATM. So, in this case, in particular, we have a situation where the money never left the bank's control, never left its ownership. And there's a substantial step that's taken place. We think that constitutes the offense. Okay. So, you think the district court got that part correct? Which part? The ownership of the money by the bank? Yes. She says she accepts what she did. She cited the U.S. Supreme Court's decision in Shaw where the Supreme Court said that. She said, yes, when it's within the ATM, it's owned by the bank. It's controlled by the bank. No one has a problem with that, I think. Okay. So, I'm sorry, then where do you think the district court went wrong? Well, the district court went wrong is in thinking that if the money were withdrawn, the defendant actually hands the money to the, or the victim actually hands the money to the defendant. Whereas our contention is the taking occurs the moment the cash appears in the cash dispenser. And it's because at that point, either the robber grabs it himself or the defendant at least has constructed possession by dint of his control over the victim. Okay. Thank you. And I'd like to reserve the remaining time for rebuttal if possible. Thank you very much. Thank you, counsel. We'll hear from the affiliate. Good morning. May it please the court. Mr. Chavez did not commit attempted bank robbery. He walked up to two people in a car and demanded money from them. When they said they did not have any money, Mr. Chavez told them to make a withdrawal from an ATM. Again, they said they didn't have any money. Mr. Chavez then asked for a cigarette and he left. Mr. Chavez did not commit attempted federal bank robbery. I am not trying to say that Mr. Chavez is innocent. He attempted to rob two people who were sitting in a car, but he did not attempt to rob a bank. Charging Mr. Chavez expands the scope of the federal bank robbery statute and takes yet one more step toward an encroaching federalization of historically state crimes. Now, if he had I'm sorry to interrupt you, counsel, but let me ask you this. If the couple had taken their debit card and put it in the ATM and then the money came out and was in the cash dispenser, would that money have been remain in the possession of the bank? If the money was out in the cash, the cash dispenser that when the money is in the cash dispenser, that money is the money of the people who are sitting in the car. And let me illustrate that. OK, OK. I'm not asking if it's there, if it's you know, you can have joint possession. I'm asking the ATM is bank property, right? Right. And so if it's still within the bank property in the cash dispenser, without regard to whether it's also within the possession of the couple, is it also within the bank's possession? It's in the bank's machinery. I don't think at that point the money is in the bank's possession, and I say that for this reason. Let's say, for example, that Mr. Chuck, the folks put them their ATM card in and withdrew the money and the money was sitting there in the cash dispenser. Let's say that moment before that happened, Mr. Chuck has left and the money was sitting right there. The individuals in the car would have taken that money. There would have been no ability for the bank to have that money back. That money is entirely and exclusively. There's no simultaneous possession of that money. That money is entirely and exclusively the money of the occupants of the car. I don't think that there is any legal basis to say that there is some type of simultaneous ownership or control or possession of that money. When cash is dispensed from an ATM machine, that money is exclusively the property of the individuals who withdrew that money. Even if it is physically delivered to the couple, to the customer on property owned by the bank? I don't think that there's any, at least that I'm aware of, any legal basis to say that that money is still in the possession or control of the bank. I think it's been dispensed by the bank at that point, and at that point, it is no longer in the bank's custody or control. It is exclusively. Okay. Hypothetically, and I understand completely what you're saying, but hypothetically, if we say that the money in the cash dispenser remains at least partially within the bank's possession, then wouldn't we have to reverse because the judge seems to have made a factual assumption that is not patent to me from the indictment itself, and that is Mr. Chavez might have gone and gotten the money from the cash dispenser himself. The judge was assuming that the couple is going to go retrieve the money, but obviously, it didn't get that far. So, really, nobody ever knows that. So, if we disagree with you on this physical question of is money in the cash dispenser a property of the bank, wouldn't we be compelled to reverse on that alone? Well, again, I don't want to concede in any way that the money, when it's dispensed, is in the property, is the property of the bank or is under the control of the bank. I don't know that there's any factual basis from which we can conclude what was going to happen if the money was actually dispensed. So, that's something that's kind of an unstated premise of the district court's decision, but I think the government, at least my recollection of their statement in their opening today, is that it's irrelevant, legally speaking, whether the would have been taken directly by Mr. Chavez from the cash dispenser or if it had been taken by the occupants of the car from the cash register and handed over to Mr. Chavez. Again, go back to the district court's decision. The district court's decision should be upheld because the district court's decision comports most closely with the language of the federal bank robbery statute. The relevant time at which the money must be in the care, custody, control, management, or possession of the bank is the moment of transfer from the victim to the defendant. And, Your Honor, to go back to your question about who has possession when the money, the cash was dispensed from the ATM. Again, I think that, I don't think that there's any legal, there's no legal principle or basis that I'm aware of to say that at the moment that the money is dispensed from the cash dispenser, the ATM, that the bank has some type of co-equal or coterminous interest in that money. I think that we all know from experiences with using ATMs, when cash is dispensed, that money is exclusively and wholly our money. The bank has no more possessory or controlling interest over that. And I don't think there's any part of this case that changes that analysis. Okay, I'll ask you another. Oh, Judge, you go ahead, Bob. You're Judge Byron. You go ahead and I'll come in after you're done. Okay. You go ahead. I've asked you. You go ahead. Well, I was going to change the subject. So, I mean, maybe we'll need Allison to custom. What makes this case difficult for me is that the charge is attempt, not actual robbery. If it were robbery, I would frankly tell you that I think that this was no longer the bank's money when it got into the dispenser tray. And so, if you took the money at that point, it was not robbery because the bank didn't have it anymore. It cast it out into the winds for whoever wanted to get it. But attempt is quite a different story. All you need is an action in furtherance of a plan to do something illegally. And at the time of this plan being hatched, there's no doubt that the money was the bank's money. And so, the defendant comes in and says, I don't quite know how I'm going to get it, but I want to get, at this moment, it is my attempt to get some money that right now is still the bank's money. It's commingled. It's sitting in a vault someplace or sitting in the ATM, but it's commingled. It hasn't been isolated to any particular customer. So, that's my plan. I want to attempt to get that bank money. Now, how can I do it? I guess I could use a bomb, I could use a terrorist, I could use machine guns walking in the lobby, or I could do it in another way. But to me, the wild card in this analysis is the ambiguity and the flexibility of the word attempt. I'd like your analysis of that approach. Certainly, Your Honor. Let me back up and just Chavez was not targeting the bank. He was not targeting the ATM. He was targeting the people who were sitting in the car when he walked up. That's true originally. He thought they would have money, but your original target, his original target, at least according to the charges, changed when they didn't have money. So, then he said, okay, now I am going to target something different. I'm going to target all this money in the bank, and how can you help me get some of it? So, at the time he developed his plan, the money hadn't yet been segregated out to the cardholder. And he was saying that nobody disagrees that at the time he says, I want that money, that money that he wants was still bank money. And he was simply coming, trying to come up with a scheme. He said, I could use a bomb, but I got a simpler way to get this money illegally. That's not mine. And here's my plan. So, that's my, if this weren't an attempt, I think it would be an easy case for you. I mean, not easy really, because we've got split of authority, but I would certainly be in your camp. Attempt is a great big problem for me. I'd like to address your honor's question because I think it does highlight a critical and important component of this case, which is that, and I want to answer it in two ways. First of all, again, Mr. Chavez was targeting the individuals in the car and the money that he was targeting was the money that belonged to the occupants of the car, whether it was money in their pockets. The money didn't belong to the occupant until they did certain steps among them being to agree to give a legal commitment to pay alternative money to the bank someday. At the moment, that money was not the credit card holder's money. And I think that's where the language of the bank robbery statute is. First of all, the language of the bank robbery statute is so important because it requires that the moment, the critical moment for when money must be in the possession control ownership of the bank, is the moment of transfer from the victim to the defendant. And that would have not taken place had the money been dispensed by the ATM. The second part of the answer that I want to emphasize, your honor, is this. By saying that attempt in this situation is enough to trigger the federal bank robbery statute, we impermissibly expand and federalize a number of historically state crimes. Let me give you an example. This would be no different than a situation of a thief breaking into somebody's house and demanding money from the homeowner. The homeowner says, I don't have any money. And the thief, knowing that virtually everybody has ATMs, says go to an ATM and get money out of the ATM. And the homeowner again says, I don't have any money. The thief leaves. That, if attempted bank robbery is allowed to apply to Mr. Chavez's case, there's nothing that prevents that analysis from applying to a situation that I just described. A homeowner, a thief breaking into somebody's house, demanding they go to an ATM, and the homeowner saying, I don't have any money, and the thief leaving. That situation would also qualify as federal bank robbery if that analysis applies to Mr. Chavez's case. And that's exactly what counsel mentioned in Vann. I mean, you just characterized Vann, which is a case that could go both ways. Precisely. And I think Vann is the appropriate analysis. It seems as though even McCarter recognizes, based on its citation in reference to Vann, that Vann provides the most clear and lucid analysis of this situation. Vann wasn't an attempted bank robbery. It wasn't an attempted robbery. The person, the victim in Vann actually went to the bank, withdrew the money, and met the defendant at a gas station. That Vann provides, I believe, the controlling analysis. And if we I know the government said that by deciding in the government's favor in this case, your honors, are not making a decision on how you would apply to Vann. But I think you would be. I think that applying bank robbery to Mr. Chavez's case would be a fundamental disagreement with Vann. And I think that would be deeply problematic because it would threaten the over-federalization of what as I've said, of what have historically been state crimes. We would open up two possible bank robbery situations that have historically been simple state crimes of robbery. And I say that for this reason. Very few people, we're reaching a point where cash, having cash in your pocket is a rarity. Most people have some form of virtual currency, whether it's in a credit card, an ATM card, some type of app on your phone. If every situation where somebody is robbed and had historically been just simply state court robbery is expanded because the money drawn upon is in some type of, is held somewhere other than the person's actual person and not in their wallet or pocket. We are saying that those situations are bank robbery. And that's what we're really saying. And I'm sorry to interrupt you in an awful lot of your time, but let me ask you one question about what you're saying to Judge Bell, because this gets to the heart of my concern about both your answer and Vann. Isn't the analysis in Vann, in Burton, in the analysis that you just elucidated, giving no, no credit to the word control. In other words, if I am a bad guy and I have a gun on someone and say, go put your debit card in the ATM, put in your pin number and, and take that out. And let's say I agree with you that, okay, once the money comes out in the cash dispenser, it's no longer the banks. Well, from the very inception, that person is, to use the language of McCarter, is an unwilling agent of mine. I am the one that has all of the control because I've got the gun at the person's head. And so when they put the debit card in the ATM, from, from the moment that ATM gets pulled out of that person's wallet, I'm the one with control. And so when it, when it, when it hits the, the bank and it, in it, in it, which is sturdily within the bank's possession, it's within the vaults of the bank, from that moment preceding and after, I have control. And so I have constructive possession of that money at all times. What's wrong with that? Your Honor, I see that I'm over my time. May I just have a few moments to answer your question? I, I think the problem with that analysis is that it shifts the focus of the bank robbery statute to a place that Congress did not intend the, the focus to be. And that is to say this, the focus of the bank robbery statute is on monies or property or possessions that are in the care, custody, control, possession, or management of the bank at the time of the transfer of the property from the victim to the defendant. And that, that moment, that's where the district court focused. And that's why I believe that this court should uphold the district court because that's the appropriate focus. Expanding that focus beyond that critical moment of the transfer of the monies or property risks over-expanding the federal bank robbery statute and getting into terrain that is dangerously, federalizes crimes that have historically been state crimes. And I hope that answered your question, Your Honor. I'm over my time. Thank you. Thank you. Judge Abell or Judge Ide, did you have any questions for the appellate? I'm good. I'm not good, but I don't have any further questions. No. I mean, I think, I think you both made really compelling arguments. I can, I mean, this, this may be a case where there are sufficient intellectual arguments both ways that practical analysis may have a, a typical influence in the outcome. But I have no questions. Okay. And I think appellate, you still have rebuttal time. So we'll hear from you. Well, the, the, the only thing I would say, Your Honor, the main thing I would say is that the control is, is an important part of this. I think where Van and where Burton go wrong is that they don't, they don't consider who has the control and when the taking is taking, when taking is occurring in a proper way. In our view, whatever happened is happening to ownership of the money when it's dispensed from the, from the ATM. Although we do think that the ownership isn't changing, but even if you set that aside and disagree with us about that, it's still going directly from the bank's control to the defendant's control. The reason that money is leaving the ATM is because it is being taken out of the ATM and who is taking that money? It is the defendant. He is the one who has control. The bank had lost control, not when the money is taken out of the slot. The bank had lost control when the money was dispensed from the bowels of the ATM into the slot. Right. And that's when the taking is occurring as well. In our view of the statute, Your Honor, at exactly that moment, when the bank is losing, I'm sorry, I'm over my time, but that, I think I made my point. And I, we would ask that, that you reverse, Your Honor. Judge Abell, did you have any follow-up? No. Judge I? No. Okay. As Judge Abell said, I thought the argument